RENDERED: SEPTEMBER 29, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-0682-MR

ANNE EVANS BAYS  APPELLANT

v.  APPEAL FROM WHITLEY CIRCUIT COURT
HONORABLE DANIEL BALLOU, JUDGE
ACTION NO. 19-CI-00108

JOHN WESLEY BAYS  APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; KAREM AND McNEILL, JUDGES.

McNEILL, JUDGE: Anne Bays ("Anne") appeals from the Whitley Circuit

Court's decree of dissolution, specifically its division of marital property. For the

reasons below, we affirm in part, reverse in part, and remand.

Anne and John Bays ("John") married in 2009 and shortly after began

a joint farming venture in Whitley County, Kentucky. They purchased a one-half

undivided interest in 325 acres of farmland from John's relatives for $185,552.50,[1] paid for with John's inheritance money. John bush-hogged the farm, and Anne and her family members installed fencing. Anne also applied for various grants to subsidize and improve the farm, ranging from $1,000 to $12,000 apiece, although the exact value of the grant monies and how they were used is unclear. Other improvements to the farm were funded with John's inheritance money, such as installing watering tanks for cattle.

The parties separated in March 2019 and Anne filed a petition for dissolution of marriage in Whitley Circuit Court. The matter was tried by the Domestic Relations Commissioner ("DRC"), where a primary subject of dispute was the parties' relative interests in the farm.[2] The DRC found the property was purchased with non-marital funds and awarded John $185,552.50 as his non-marital interest in the property. It valued the farm at $650,000, based upon its appraisal, and found the increase in value was a marital asset to be split between the parties. It then awarded Anne $232,223.75, representing one-half of the increase in the value of the farm.[3]

---

[1] The parties originally contracted to buy the entire farm for $371,105 but when it was discovered the sellers could only convey a one-half undivided interest the price was reduced.

[2] The DRC's division of the parties' other marital and non-marital property is not disputed on appeal; therefore, we do not recite those determinations here.

[3] This value was reached by subtracting the $185,552.50 purchase price from the $650,000 appraisal price and then dividing by two.

John filed exceptions to the DRC's recommendations, specifically challenging its $650,000 valuation of the farm. John argued since the parties only owned a one-half undivided interest, and since the appraisal was based upon the whole farm, the parties' interest should be valued at $325,000. John claimed his non-marital contributions to the property exceeded this amount and he should be credited the entirety.

The trial court remanded the matter to the DRC, who entered new recommended findings and conclusions. It overruled John's exception the farm be valued at $325,000, but reduced its valuation of Anne's marital interest in the farm to $139,447.50,[4] for her contribution to improvements to the property, including a barn and chicken coop. John again filed exceptions to the $650,000 property valuation and argued the DRC failed to recognize his non-marital contribution of more than $96,000 to improving the farm.

Following a hearing, the trial court entered its findings of fact, conclusions of law, and decree of dissolution of marriage. It rejected the DRC's recommended property valuation of $650,000 and instead valued the property at $325,000, reflecting the parties' one-half undivided interest. It also found John

_____

[4] The DRC arrived at this number by subtracting the original purchase price for the entire farm (which was later reduced by fifty percent because the parties could only purchase a one-half undivided interest), $371,105, minus the appraisal value of the farm, $650,000, and then dividing by two.

made a $96,000 non-marital contribution to improving the farm, as well as additional non-marital improvements exceeding $5,000. The trial court found the value of these improvements plus John's non-marital funds used to purchase the property exceeded the total value of the one-half undivided interest in dispute and awarded John the farm free from any claims by Anne. It did not credit Anne with any increase in the value of the farm.

Anne filed a motion to alter, amend, or vacate the judgment, specifically challenging the finding John made $101,000 of non-marital improvements to the farm was not supported by substantial evidence. The trial court overruled the motion. This appeal followed. Further facts will be set forth as necessary below.

"We review the findings of fact in a dissolution action only to determine if they are clearly erroneous." *Stipp v. St. Charles*, 291 S.W.3d 720, 723 (Ky. App. 2009) (citing Kentucky Rules of Civil Procedure ("CR") 52.01; *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004)). "Decisions concerning the division of marital property are also within the sound discretion of the trial court, and will not be disturbed except for an abuse of that discretion." *Id.* (citing *Neidlinger v. Neidlinger*, 52 S.W.3d 513 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018)).

Anne first argues the trial court erred in valuing the property at one-

half of its appraised value, $325,000, instead of its full appraised value, $650,000. She asserts that equitable interests in land are marital assets subject to division in divorce proceedings and the trial court failed to account in its valuation for the parties' equitable interest in the portion of the farm they do not own. While we find her general challenge to the trial court's valuation preserved, her arguments concerning equitable interests in land were never presented to the trial court, therefore, we will not consider them here.[5] *See Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011), *abrogated on other grounds by Nami Res. Co., L.L.C. v. Asher Land & Mineral Ltd.*, 554 S.W.3d 323 (Ky. 2018) (citations omitted) ("[S]pecific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal."); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (internal quotation marks and citation omitted) ("More importantly, this precise argument was never made in the trial court. An appellate court is without authority to review issues not raised in or decided by the trial court.").

---

[5] Anne claims that she preserved "the issue of her equitable interest in the property" in her motion to alter, amend, or vacate when she argued "the judgment had not considered the improvements made to the farm as a joint effort, and their [sic] parties 'sweat equity.'" While her motion generally references the DRC's "equitable award" of $139,447.50 to Anne for contributions to the increase in the value of the property, the only argument she makes in the motion, relevant to the appeal, is the trial court's award of $101,000 of non-marital improvements to the farm is not supported by substantial evidence. Anne does not make the specific arguments she now makes on appeal concerning equitable interests and property valuation.

"We review a trial court's determinations of value and division of marital assets for abuse of discretion." *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010) (citation omitted). A court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Rice v. Rice*, 336 S.W.3d 66, 68 (Ky. 2011) (citation omitted). Here, the trial court valued the farm at $325,000, one-half of its appraised value, finding "the appraisal should be reduced to $325,000 which represents the undivided one-half interest" of the parties. At the hearing on her motion to alter, amend, or vacate, Anne argued the property should be valued at $650,000, pointing to the DRC's finding that it was unlikely the other heirs would ever come forward to assert their interest, since they had not done so in the ten years the Bays have owned the farm.

However, in valuing assets, a trial court's "decision must be supported by adequate evidence, and should avoid speculation and assumptions as much as possible." *Gaskill v. Robbins*, 282 S.W.3d 306, 315 (Ky. 2009). Whether or not the heirs will come forward is simply unknown. What is known is that the Bays owned a one-half undivided interest, and the trial court's decision to value that interest at $325,000, one-half the property's appraisal value, was not an abuse of discretion.

Anne next argues the trial court failed to recognize her marital and non-marital contributions to the property in its division.[6]  Specifically, she argues where non-marital property increases in value due to the contributions of a spouse, the increase in value becomes marital property to be divided between the parties, citing KRS[7] 403.190(2)(a) and *Travis v. Travis*, 59 S.W.3d 904 (Ky. 2001).  Here, the trial court valued the property at $325,000 and credited John with the $185,552.50 purchase price, which it found had been paid with John's non-marital funds.  The remaining $139,447.50 represents the increased value of the property.  Anne argues this increased value is presumed marital, and the trial court erred in failing to assign her any portion of this increase.

KRS 403.190(3) presumes that "[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is . . . marital property."  This includes any increase in value.  *Travis*, 59 S.W.3d at 910.  "[T]herefore, a party asserting that he or she should receive appreciation upon a non[-]marital contribution as his or her non[-]marital property carries the burden of

---

[6] Within this argument, Anne made three other assignments of error:  (1) the trial court erred in failing to apply the three-step approach to property division set forth in *Ensor v. Ensor*, 431 S.W.3d 462 (Ky. App. 2013); (2) the trial court erred in not recognizing her interest in $104,000 of income from a USDA Wetlands lease; and (3) the trial court erred in not crediting her non-marital contributions of $20,000 for a horse barn and $2,800 for a chicken coop.  These arguments were never made to the trial court, so they are not preserved for our review.  Therefore, we decline to address them.

[7] Kentucky Revised Statutes.

proving the portion of the increase in value attributable to the non[-]marital contribution." *Id.* (citation omitted). This brings us to a related argument.

Anne contends the trial court erred in assigning John an additional $101,000 non-marital contribution for improvements to the property because John did not meet his burden to trace this amount to non-marital funds.[8] She specifically points to John's extensive commingling of funds from his inheritance account with those of the parties' joint account and the farm account. We agree John did not adequately trace $101,000 for improvements to non-marital funds, nor did he show the increase in value attributable to those funds. The evidence shows John wrote a $96,000 check to the farm's bank account five days after he deposited $90,390.52 from his deceased wife's estate into his inheritance account. This $96,000 check presumably represents the $96,000 non-marital contribution towards improvements the trial court credited John.

However, John presented no evidence of how this money was spent or how it increased the value of the property. It seems likely that $35,552.50 of it went to pay off the farm, as that check was written from the farm account less than a month after the $96,0000 was deposited. However, there was no testimony or

---

[8] In the alternative, Anne argues this $101,000 was a gift to the farm and thus marital property. Because we hold John failed to adequately trace $101,000 of non-marital funds to improving the farm, or prove any increase in the value of the farm attributable to such funds, we decline to address this secondary argument.

evidence of how the other $60,000 was spent or the increase in property value attributable to it. As noted above, "a party asserting that he or she should receive appreciation upon a non[-]marital contribution as his or her non[-]marital property carries the burden of proving the portion of the increase in value attributable to the non[-]marital contribution." *Travis*, 59 S.W.3d at 910 (citation omitted).

Further, our Court expounded upon *Travis*' holding in *Maclean v. Middleton*, 419 S.W.3d 755 (Ky. App. 2014), *as modified* (Jan. 10, 2014), where we stated:

> The *Travis* Court clearly distinguishes between costs expended to acquire an asset and costs that may have been expended to improve an asset. . . . The holding in *Travis* requires more, however, than just proof of the expenditure of funds from a non[-]marital source if the expenditure is for an "improvement" or for the remodeling the asset as opposed to the acquisition of the asset.
>
> The *Travis* holding requires that [a party] prove the portion of the increase in value of [the property] attributable to the expenditures for "improvements" and states that "[b]y virtue of the KRS 403.19[0](3) presumption, the failure to do so will result in the increase being characterized as marital property." *Travis*, 59 S.W.3d at 910-11.

*Id.* at 769.

As for tracing, "[a] claimant cannot meet the tracing requirement simply by showing that he or she brought non-marital property into the marriage without also showing that he or she has spent his or her non-marital assets in a

traceable manner during the marriage." *Polley v. Allen,* 132 S.W.3d 223, 229 (Ky. App. 2004). Here, John commingled $60,000 of his non-marital funds in the marital farm account and offered no evidence of how those funds were spent.[9] He also offered no evidence of a $101,000 increase in value to the farm attributable to the improvements. John had the burden of showing any increase in the property's value attributable to his non-marital property. "By virtue of the KRS 403.190(3) presumption, the failure to do so will result in the increase being characterized as marital property." *Travis*, 59 S.W.3d at 911.

The trial court awarded John the entire $139,447.50 increase in the property's value, despite only attributing $101,000 of non-marital funds to improvements. It is unclear why the balance was also awarded to John.[10] Regardless, because we hold that John failed to prove the $139,447.50 increase in the property's value was attributable to his non-marital funds, or to adequately trace $101,000 of non-marital funds for improvements, we hold the increase in property value is marital property to be equitably divided between the parties.

---

[9] John arguably traced $28,050 of non-marital funds to improvements as there was evidence John spent money from his inheritance account to clear land and install water tanks on the farm for the cattle. However, as mentioned, this money was from his inheritance account, not the farm account, where the $96,000 was deposited and the basis for the trial court's award. Regardless, John did not show $101,000 of non-marital contributions to improving the farm as found by the trial court.

[10] Anne argues the trial court erred in awarding this balance to John. Because we hold the entire $139,447.50 is marital property, we decline to address this argument.

Wherefore, the judgment of the Whitley Circuit Court is affirmed in part and reversed in part. On remand, the trial court shall equitably divide the $139,447.50 increase in the farm's value between the parties and enter a new judgment accordingly.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Sandra J. Reeves
Corbin, Kentucky

BRIEF FOR APPELLEE:

John A. Combs
London, Kentucky